E-FILED
Wednesday, 19 May, 2021  12:07:42 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 20-cr-30075-1** |
| | ) | |
| **BRANDON HOWELL,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant's Motion for Determination of Statutory Sentencing Range (d/e 38). For the reasons set forth below, Defendant's motion is DENIED.

## I. BACKGROUND

On December 2, 2020, an Indictment (d/e 5) was returned charging Defendant Howell and a codefendant with conspiracy to distribute cocaine and methamphetamine and distribution of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)–(B). On March 17, 2021, Defendant Howell filed the pending Motion (d/e 38) along with a supporting Memorandum of Law (d/e 39). Defendant requests a favorable determination as to

the meaning of 18 U.S.C. § 3553(f)(1), a determination that his prior conviction under 720 ILCS 5/32-4a(a) is not a "crime of violence" under 18 U.S.C. § 16, and a hearing on his motion at "the earliest possible date."  D/e 38, pp. 4–5.  On March 19, 2021, Defendant filed a Supplemental Memorandum of Law (d/e 40) in support of his Motion.  On April 1, 2021, the Government filed a Response (d/e 41) to Defendant's Motion.  Defendant filed a Reply (d/e 42) to the Government's Response on April 23, 2021, and the Government filed a supplemental Response (d/e 43) on May 7, 2021.

## II. ANALYSIS

Defendant's Motion asks the Court to interpret 18 U.S.C. § 3553(f), the so-called "safety valve" provision.  The safety valve requires federal courts to impose a sentence "without regard to any statutory minimum sentence" if the defendant satisfies the five requirements set forth in § 3553(f)(1)–(5).  Before 2018, the criminal history requirement imposed by § 3553(f)(1) limited safety valve eligibility to defendants who "d[id] not have more than 1 criminal history point, as determined under the sentencing guidelines."  18 U.S.C. § 3553(f)(1) (2012).  The First Step Act 2018 expanded safety valve eligibility by relaxing subsection (f)(1)'s criminal history

requirement.  The statute now provides, in relevant part, that:

> ]T]he court shall impose a sentence pursuant
> to guidelines promulgated by the United States
> Sentencing Commission under section 994 of
> title 28 without regard to any statutory
> minimum sentence, if the court finds at
> sentencing, after the Government has been
> afforded the opportunity to make a
> recommendation, that—
>
> (1) the defendant does not have—
>
>> (A)  more than 4 criminal history points,
>>      excluding any criminal history points
>>      resulting from a 1-point offense, as
>>      determined under the sentencing
>>      guidelines;
>>
>> (B) a prior 3-point offense, as determined
>>     under the sentencing guidelines; <u>and</u>
>>
>> (C) a prior 2-point violent offense, as
>>     determined under the sentencing
>>     guidelines

18 U.S.C. § 3553(f) (emphasis added).  Here, Defendant's

safety valve eligibility hinges on the meaning of the underlined

"and," the last word in subparagraph (B).  Defendant argues that

the "and" is conjunctive, such that only those defendants whose

criminal histories include more than 4 criminal history points, <u>and</u>

a prior 3-point offense, <u>and</u> a prior 2-point violent offense are

ineligible for the safety valve.  The Government's position is that the

"and" functions disjunctively, such that any defendant who has either more than 4 criminal history points, <u>or</u> a prior 3-point offense, <u>or</u> a prior 2-point violent offense is ineligible.

Criminal history points are assigned according to the rules set forth in § 4A1.1 of the U.S. Sentencing Guidelines. A prior offense that resulted in a sentence of imprisonment of more than 13 months results in 3 criminal history points, while a prior offense resulting in a sentence of between 60 days and 13 months of imprisonment results in 2 criminal history points. In other words, subparagraph (B), which is satisfied by a "prior 3-point offense," covers serious felonies, while subparagraph (C), which is satisfied by a "prior 2-point violent offense," covers violent offenses that are not serious felonies.

The parties agree that Defendant has more than 4 criminal history points under subparagraph (A) and a prior 3-point offense under subparagraph (B). Defendant argues that his criminal history does not include a "prior 2-point violent offense" under subparagraph (C), while the Government argues that Defendant's 2007 conviction for Harassment of a Witness in violation of 720 ILCS 5/32-4a(a) is a "prior 2-point violent offense." Because the

Court finds that Defendant is ineligible for the safety valve

regardless of whether his 2007 conviction is a crime of violence, the

Court does not reach the crime-of-violence issue.  Additionally,

because Defendant's motion turns on a purely legal question of

statutory interpretation, the Court will decide the motion on the

basis of the parties' briefs rather than granting Defendant's request

for a hearing.

The Seventh Circuit has never specifically addressed the issue

of whether § 3553(f)(1) should be interpreted conjunctively or

disjunctively.  While several district courts, and the Eleventh

Circuit, have addressed the issue, these decisions are not binding

on the Court.  See United States v. Garcon, No. 19-14650, 2021 WL

1972237 (11th Cir. May 18, 2021) (adopting the disjunctive reading

because conjunctive reading renders part of § 3553(f)(1)

superfluous); United States v. Ingram, 2021 WL 1813178 (C.D. Ill.

May 6, 2021) (adopting the disjunctive reading because conjunctive

reading produces superfluities and absurd results); United States v.

Adame, No. 1:18-CR-00391-BLW, 2019 WL 5191823 (D. Idaho Oct.

15, 2019) (similar); United States v. Lopez, No. 19-CR0261-L, 2019

WL 3974124 (S.D. Cal. Aug. 21, 2019) (finding 18 U.S.C.

§ 3553(f)(1) to be "ambiguous" and adopting the conjunctive interpretation after applying the rule of lenity).  In the absence of binding authority, the first step in resolving any question of statutory interpretation is to "start with the text of the statute to ascertain its plain meaning."  Jackson v. Blitt & Gaines, P.C., 833 F.3d 860, 863 (7th Cir. 2016).  This inquiry considers both "the particular statutory language at issue" and "the language and design of the statute as a whole."  Id. (quoting K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291 (1988).

Defendant's argument relies primarily on a straightforward reading of the plain text of § 3553(f)(1).  As Defendant notes, the word "and" ordinarily functions conjunctively, and when the last two items of a list of prohibited items are joined by an "and," "the listed things are individually permitted but cumulatively prohibited."  Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 119 (2012).  Accordingly, the phrase "don't drink and drive" means that drinking is allowed and driving is allowed, but doing both together is prohibited.  Defendant argues that if the list elements were meant to be individually prohibited, Congress would have used the word "or" instead of "and," as "or"

normally functions disjunctively.

The Government agrees that "and" usually functions conjunctively but argues that in this particular instance the phrase "does not have," which introduces subparagraphs (A)–(C), should be applied to each individual requirement separately, such that

> [A defendant is safety valve eligible if]—
>
> **(1)** the defendant does not have—
>
>> **(A)** more than 4 criminal history points . . . ;
>> **(B)** a prior 3-point offense . . . ; and
>> **(C)** a prior 2-point violent offense . . . .

reads in sentence form as

> [A defendant is safety valve eligible if] the defendant does not have more than 4 criminal history points, [does not have] a prior 3-point offense, and [does not have] a prior 2-point violent offense. [1]

Both readings are grammatically plausible.  The conjunctive reading has the advantage of conforming with the normal operation

---

[1] The Government's Response brief asserts that this distributed "does not have" interpretation follows if paragraph (1) is interpreted as a "conjunctive negative proof." D/e 41, p. 11; see Adame, 2019 WL 5191823, at *7.  In fact, as the Government has admitted elsewhere, interpreting § 3553(f)(1) as a conjunctive negative proof would produce Defendant's preferred reading.  See Scalia & Garner, Reading Law at 120 (explaining that the conjunctive negative proof formulation requires proof that "all three" of the prohibited characteristics are not present); U.S. v. Lopez, 9th Cir. Case No. 19-50305, Appellee's Reply Brief (d/e 31), pp. 7–8 (conceding that a conjunctive negative proof reading of § 3553(f)(1) would produce a conjunctive interpretation).

of the word "and."  Elsewhere in § 3553, however, the presence of
an em dash before a list in statutory language indicates that the
word or phrase preceding the dash should be distributed to modify
each of the succeeding list items individually.  See 18 U.S.C.
§ 3553(a)(2) (distributing the phrase "the need for the sentence
imposed" to modify each of the succeeding subparagraphs); Mitchell
v. Chapman, 343 F.3d 811, 830 (6th Cir. 2003) (explaining that the
use of an em dash to introduce a list can mean that the list items
following the em dash individually modify the term preceding the
em dash).  To choose between these two grammatically plausible
alternatives, the Court considers all the "traditional tools of
statutory interpretation."  Facebook, Inc. v. Duguid, 141 S. Ct.
1163, 1170 n.5 (2021); see United States v. Draheim, 958 F.3d 651,
658 (7th Cir. 2020) (relying on text, legislative history, and statutory
purpose of § 3553(f) to determine the unambiguous meaning of
"and" in § 3553(f)(4)).

### A.   The Conjunctive Interpretation Renders Part of § 3553(f)(1) Superfluous and Gives Rise to Absurd Results

While grammatically plausible on its face, the conjunctive
interpretation suggested by Defendant runs afoul of the "well-

established principle[] of statutory interpretation" under which
"[i]nterpretations that result in provisions being superfluous are
highly disfavored."  River Rd. Hotel Partners, LLC v. Amalgamated
Bank, 651 F.3d 642, 651 (7th Cir. 2011), aff'd sub nom. RadLAX
Gateway Hotel, LLC v. Amalgamated Bank, 566 U.S. 639 (2012).
Any defendant whose criminal history includes one 3-point offense
and one 2-point violent offense will necessarily have at least five
criminal history points.  Since subparagraph (A) is satisfied by any
defendant with "more than 4 criminal history points" not from 1-
point offenses, any defendant who satisfies subparagraph (B) by
having a "prior 3-point offense" and satisfies subparagraph (C) by
having a "prior 2-point violent offense" necessarily has at least 5
criminal history points that do not result from 1-point offenses, and
therefore satisfies subparagraph (A) as well.  Under the conjunctive
reading, therefore, subparagraph (A) is entirely superfluous.  See
Adame, 2019 WL 5191823, at *7 (discussing redundancy created by
conjunctive reading).

Defendant argues that, under his interpretation, a "single,
three-point, violent offense" would satisfy (B) and (C) without
satisfying (A).   In other words, Defendant invites the Court to add

the words "or 3-point" to subparagraph (C) so that a defendant with "a prior 2-point [or 3-point] violent offense" satisfies the subparagraph's requirement.  If a single offense could satisfy the "prior 3-point offense" requirement and the "prior 2-point violent offense" requirement, the minimum number of criminal history points required to satisfy both (B) and (C) would be 3 rather than 5. Under this interpretation, subparagraph (A) would not be redundant because it would allow defendants with a single violent felony to be safety-valve eligible while excluding violent felons with more than one serious prior offense.  This "2-point or 3-point" reading, however, is incompatible with the text of subparagraph (C), which specifically and exclusively addresses 2-point offenses.  The Court will not construe the statutory phrase "prior 2-point violent offense" to include 3-point offenses where an alternative interpretation consistent with the plain language of the statue exists.

Defendant also argues that "'[a]nd' should be read conjunctively, *because* it creates redundancy."  D/e 40, pp. 2–3; see Abbe R. Gluck & Lisa Schultz Bressman, Statutory Interpretation from the Inside—an Empirical 3 Study of Congressional Drafting,

Delegation, and the Canons: Part I, 65 Stan. L. Rev. 901, 934 (2013)
(survey of Congressional staffers showed that drafters sometimes
"intentionally err on the side of redundancy").  Recent Seventh
Circuit precedents establish that "the presence of some redundance
is rarely fatal on its own to a statutory reading."  White v. United
Airlines, 987 F.3d 616, 622 (7th Cir. 2021); see also Bridges v.
United States, 991 F.3d 793, 802 (7th Cir. 2021) ("[A] textual
argument based on avoiding redundancy is not necessarily a show-
stopper.").  However, the Seventh Circuit has not held that the
canon against surplusage is obsolete or irrelevant in 2021.  Rather,
the Seventh Circuit has admonished against rejecting a reasonable
interpretation solely on the grounds that it creates some
superfluity.  See White, 987 F.3d at 622 (explaining that
"redundance provides a clue as to the better interpretation but is
not always dispositive" and adopting a somewhat redundant
reading where legislative history produced a "straightforward
explanation" for the redundancy).  Here, the provision rendered
redundant by the conjunctive reading is situated directly next to the
provisions that render it redundant, and the redundancy created is
so complete that it cannot be explained by a drafter's desire to err

on the side of caution with an overinclusive belt-and-suspenders
approach.  While the canon against superfluity is not dispositive of
Defendant's motion, it provides a useful clue as to the intent of
Congress and weighs in favor of a disjunctive interpretation of
§ 3553(f)(1).

Another well-established canon of statutory interpretation
counsels against adopting constructions that produce absurd
results.  See United States v. Vallery, 437 F.3d 626, 630 (7th Cir.
2006) (statutes are construed to avoid "absurd results"); Matter of
Merchants Grain, Inc. By & Through Mahern, 93 F.3d 1347, 1354
(7th Cir. 1996) (statutes are construed to "favor the most
reasonable result").  Under the conjunctive reading of § 3553(f)(1), a
defendant who had multiple 3-point violent offenses would be safety
valve eligible so long as he did not also have "a prior 2-point violent
offense" satisfying subparagraph (C).  This result would reward
defendants for committing multiple serious violent offenses rather
than a single less serious violent offense.  Defendant argues, once
again, that the conjunctive reading can be rescued by interpreting
subparagraph (C) to be satisfied by any violent offense that results
in 2 or 3 criminal history points.  As discussed above, this

interpretation cannot be reconciled with the plain text of the statute.

Rather than producing superfluities or absurd results, the disjunctive reading proposed by the Government assigns distinct and harmonious functions to each of subparagraphs (A)–(C).  Under the disjunctive reading, subparagraph (A) excludes repeat offenders, subparagraph (B) excludes felons, and subparagraph (C) excludes violent offenders.  Subparagraph (A), which is rendered redundant by the conjunctive reading, is the only provision that excludes defendants with 3 or more prior 2-point nonviolent convictions under the disjunctive reading.   Furthermore, the language of subparagraph (C)—which excludes only defendants with a "2-point violent offense," as opposed to defendants with a "2-point or 3-point violent offense"—makes logical sense under the disjunctive reading because defendants with 3-point violent offenses are already excluded by subparagraph (B).

**B.    The Legislative History of the First Step Act's Safety Valve Expansion Supports a Disjunctive Interpretation of § 3553(f)(1)**

The legislative history of the current version of § 3553(f) provides further support for the disjunctive reading.  When an early

version of the First Step Act was introduced in the Senate in November 2018, the Senate Judiciary Committee published a "fact sheet" and a "section-by-section summary" summarizing the bill's provisions.  Each of these documents states that any defendant who has more than 4 criminal history points, or a prior 3-point offense, or a prior 2-point violent offense will be ineligible for the safety valve.  See The First Step Act of 2018 (S.3649) – as introduced, Senate Judiciary Committee, https://www.judiciary. senate.gov/download/revised-first-step-act_-summary (last accessed May 19, 2021); S. 3649 - The First Step Act Section-by-Section, p. 6, Senate Judiciary Committee, https://www.judiciary.senate.gov/ download/revised-first-step_-section-by-section (last accessed May 19, 2021).  These summaries address the version of the First Step Act that was introduced on November 15, 2018, rather than the revised version that was signed into law on December 21, 2018, but the language of § 3553(f)(1) is the same in both measures.  Furthermore, the Judiciary Committee's point-by-point summary of the changes incorporated into the revised First Step Act does not indicate any change in the Judiciary Committee's understanding of the meaning of § 3553(f)(1)

between the initial and revised First Step Acts.  <u>See</u> Summary of Revised First Step Act, Senate Judiciary Committee, https://www.judiciary.senate.gov/download/first-step-act_-amendment-summary (last accessed May 19, 2021).

Additionally, several members of Congress stated during floor debates that the revised First Step Act expanded the safety valve to include "low-level, nonviolent" offenders.  <u>See</u> 164 Cong. Rec. S7649 (Senator Grassley); 164 Cong. Rec. S7739 (Senator Schumer); 164 Cong. Rec. 7774 (Senator Feinstein); 164 Cong. Rec. H10362 (Congressman Goodlatte).  The use of this formulation instead of "low-level <u>or</u> nonviolent offenders" implies an understanding of the safety valve in which offenders are excluded if they are either high-level or violent, even if they are not both.

Defendant argues that certain other statements by legislators indicate an understanding more in line with his conjunctive interpretation.  Specifically, he points to Senator Patrick Leahy's statement that "I truly believe the error of mandatory minimum sentencing is coming to an end," 164 Cong. Rec. S7749, as evidence that "Senator Leahy hoped the new Safety Valve would end mandatory minimums."  D/e 42, p. 15.  However, Senator Leahy

elsewhere states that he "would like to see a broader judicial safety valve" than the one enacted, but that "the nature of compromise" is that "[y]ou don't get everything you want."  164 Cong. Rec. S7749. In context, Senator Leahy's statement is aspirational, evincing a belief that the First Step Act represents the first rather than the last step towards the elimination of mandatory minimums.

Defendant also raises a textualist objection to the use of unfavorable legislative history.  Defendant notes that the beliefs of individual members of Congress regarding a statute's meaning do not necessarily reflect the intent of Congress as a whole and cites Bostock v. Clayton County, Georgia, 140 S. Ct. 1731 (2020), for the proposition that judicial reliance on legislative history that contradicts the plain meaning of statutory text "risk[s] amending statutes outside the legislative process."  Id. at 1738.  It is true that reliance on legislative history is inappropriate where the language of a statute is unambiguous and does not lead to absurd results. Preston v. Midland Credit Mgmt., Inc., 948 F.3d 772, 783 (7th Cir. 2020).  But the Court has already applied the traditional tools of statutory interpretation and concluded that the text of § 3553(f) does not unambiguously require the result that Defendant requests.

A court may appropriately consult legislative history when a statute is ambiguous.  <u>Matter of Burciaga</u>, 944 F.3d 681, 684 (7th Cir. 2019); <u>see</u> <u>White v. United Airlines, Inc.</u>, 987 F.3d 616, 622 (7th Cir. 2021) (resolving textual ambiguity by consulting legislative history to determine statute's intended meaning).  Here, the legislative history of the 2018 safety valve expansion resolves any textual ambiguity in § 3553(f)(1) by confirming that Congress intended the provision to be read disjunctively.

### C.  The Rule of Lenity Does Not Apply

District courts in other circuits have found that both conjunctive and disjunctive interpretations of § 3553(f)(1) are plausible and that the rule of lenity therefore requires courts to adopt the reading that favors defendants.  <u>See</u> <u>United States v. Lopez</u>, No. 19-CR-0261-L, 2019 WL 3974124, at *7 (S.D. Cal. Aug. 21, 2019).  However, the rule of lenity applies only when "after considering text, structure, history and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what Congress intended."  <u>Abramski v. United States</u>, 573 U.S. 169, 188 n.10 (2014).  Any ambiguity in the plain text of § 3553(f)(1) can be satisfactorily resolved by

analyzing the structure and legislative history of the provision. Accordingly, the rule of lenity does not apply.

### III. CONCLUSION

For the reasons stated, Defendant Brandon Howell's Motion for Determination of Statutory Sentencing Range (d/e 38) is DENIED.


ENTER:  May 19, 2021

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE